FILED
SALINE COUNTY
CIRCUIT CLERK

2017 NOV -3   PM 3: 43

BY:_____

## IN THE CIRCUIT COURT OF SALINE COUNTY ARKANSAS
## CIVIL DIVISION

**JERRI PLUMMER**                                                    **PLAINTIFF**

**Vs.**                           **CASE NO. 63CV- 17- 1149**

**RHETT MCSWEENEY;**
**DAVID LANGEVIN;**
**MCSWEENEY LANGEVIN, LLC;**
**WHITNEY SHOEMAKER, DO;**
**WOMEN'S HEALTH AND SURGERY CENTER, LLC;**
**PLAINTIFF FUNDING HOLDING INC., D/B/A LAWCASH;**
**VINCENT CHHABRA;**
**MICHAEL CHHABRA;**
**LAW FIRM HEADQUARTERS, LLC;**
**SURGICAL ASSISTANCE, INC;**
**WESLEY BLAKE BARBER;**
**KASIA OSADZINSKA, MD; and**
**BOSTON SCIENTIFIC CORPORATION**
**ALPHA LAW, LLP; and**
**RICHARD MARTINDALE**
**JOHN DOES 1-99**                                              **DEFENDANTS**

## COMPLAINT

Comes now the Plaintiff, Jerri Plummer, by and through her attorneys,

the Baxter Law Firm and Ellis Law Firm, P. A. and for her complaint herein

alleges and states:

## INTRODUCTION

1

1. This cause of action stems from a deep running conspiracy to turn a potential defective medical product into a cash cow for a wide range of people including lawyers, doctors, and investors, but not for the women who had the potentially defective medical product installed in their bodies. In fact, the result of the scheme was to leave the woman who had the product in their body with almost no compensation and an unneeded medical procedure which exacerbated their medical problems.

2. This is an action for professional negligence, breach of fiduciary duty, civil conspiracy, deceptive trade practices, and declaratory judgment under Arkansas law.

### PARTIES

3. Plaintiff, Jerri Plummer ("Jerri") is, and at all times relevant hereto, was a resident of Saline County, Arkansas.

4. Based upon information and belief, Defendant, Rhett McSweeney is a resident of the state of Minnesota. Likewise, Defendant Rhett McSweeney is a licensed attorney in the state of Minnesota.

5. Based upon information and belief, Defendant, David Langevin is a resident of the state of Minnesota. Likewise, Defendant Langevin is a licensed attorney in the state of Minnesota.

2

Original Complaint
Plummer v. McSweeney, et al

EXHIBIT A

6. Based upon information and belief, Defendant, McSweeney Langevin, LLC ("McSweeney/Langevin") is a limited liability company organized under the laws of Minnesota. Both Defendants Rhett McSweeney and David Langevin are members and agents of McSweeney/Langevin, LLC.

7. Based upon information and belief, Defendant Richard Martindale is a resident of Washington D.C. or the state of Texas. Likewise, Defendant Martindale is a licensed attorney in the state of Texas and in Washington, D.C.

8. Based upon information and belief, Defendant Alpha Law LLP ("Alpha Law")is a limited liability partnership formed under the laws of the District of Columbia. Both Defendant Richard Martindale and Michael Chhabra are members of Alpha Law. Further, based upon information and belief, Alpha Law can be served through its registered agent of service in the District of Columbia, Lonny Bramzon, Esq, 1201 L Street NW, Suite 800 Washington, District of Columbia 20037.

9. Based upon information and belief, Defendant Whitney Shoemaker is a resident of Florida.

10. Based upon information and belief, Defendant Women's Health and Surgery Center, LLC ("Women's Health and Surgery") is a limited liability company organized under the laws of Florida. Women's Health and Surgery

3

can be served through its registered agent of service, Vikram Saini 483 N. Semoran Blvd Suite 205 Winter Park, FL 32792.

11.   Based upon information and belief, Defendant, Plaintiff Funding Holding, Inc., is a corporation organized under the laws of Delaware, but it does business as "LawCash." Plaintiff Funding Holding, Inc (hereinafter referred to as "LawCash") can be served through its registered agent of service with the Delaware Secretary of State, Corporation Service Company, 251 Little Falls Drive Wilmington Delaware, 19808

12.   Based upon information and belief, Defendant Vincent Chhabra is a resident of the State of Florida.

13.   Based upon information and belief, Michael Chhabra is a resident of the state of Florida.

14.   Based upon information and belief, Law Firm Headquarters, LLC ("Law Firm Headquarters") is a limited liability company organized under the laws of Florida. Likewise, based upon information and belief, both Defendants Michael Chhabra and Vincent Chhabra are believed to be members and agents of Law Firm Headquarters, LLC which is their alter ego. Law Firm Headquarters can be served through its registered agent of service in Florida, Sushma Chhabra, 1000 Corporate Dr. Suite 500, Ft. Lauderdale, Florida 33334.

4

15.   Based upon information and belief, Defendant Surgical Assistance, Inc is a dissolved Florida Corporation. Surgical Assistance, can be served through its registered agent of service, MDJD Marketing and Management Consultants, Inc 8815 Conroy Winderemere rd., Suite 171, Orlando, Florida 32835.

16.   Defendant, Wesley Blake Barber ("Mr. Barber"), based upon information and belief, is a resident of the state of Florida.

17.   Defendant, Kasia Osadzinska, MD, based upon information and belief is a resident of the state of Florida.

18.   Based upon information and belief, Defendant Boston Scientific Corporation ("Boston Scientific") is corporation organized under the laws of Delaware with its principal place of business in Massachusetts. Defendant Boston Scientific can be served through its registered agent of service in Arkansas, Corporation Company, 300 Spring Building, Suite 900 300 S. Spring Street. Little Rock, Arkansas 72201.

## JURISDICTION AND VENUE

19.___Rhett McSweeney; David Langevin; McSweeney Langevin; Richard Martindale, and Alpha Law, LLP have all been counsel for the Plaintiff in a claim against Defendant, Boston Scientific in a claim regarding potentially

5

defective transvaginal mesh. Jerri is a resident of Arkansas. The mesh in question was implanted in Arkansas. Likewise, her claim for personal injury for which the above-mentioned attorneys represented her in sounds under Arkansas Law.

20.    Further, McSweeney Langevin advertises that they handle claims in Arkansas.[1]

21.    Likewise, as detailed later in the Complaint, all of the Defendants, save Boston Scientific, engaged in a conspiratorial relationship to have Jerri, a resident of Arkansas, leave Arkansas and go to Florida to receive unnecessary medical treatment for the sole purpose of increasing the value of her case to them, and thus increase their profits.

22.    Also, LawCash is in the business of lending money to people with personal injury claims. LawCash lends money to people with personal injury claims in Arkansas and specifically loaned money to Jerri secured by an interest in her potential personal injury claim against Boston Scientific while Jerri was a resident of Arkansas. In fact, the contractual document that Jerri executed with LawCash was executed by her in the State of Arkansas. Jerri's claims against LawCash relate to this loan funding

---

[1] www.westrikeback.com (accessed October 29, 2017) (stating "[o]ur dangerous and defective medical device attorneys handle cases throughout the entire United States: . . . Arkansas. . . .").

Original Complaint
Plummer v. McSweeney, et al

EXHIBIT A

relationship. Moreover, Jerri was referred to LawCash by Surgical Assitance, Blake Barber, and Law Firm Headquarters.

23.     Furthermore, Defendant Law Firm Headquarters was in the business of soliciting potential vaginal mesh clients for Alpha Law and McSweeney Langevin. They likewise managed parts of client's cases that they generated for Alpha Law and McSweeney Langevin. At all times in their solicitation and management of clients, they were agents of McSweeney Langevin, Rhett McSweeney, David Langevin, Richard Martindale, and Alpha Law.[2]

24.     Law Firm Headquarters, McSweeney Langevin, Rhett McSweeney, David Langevin, Richard Martindale, and Alpha Law caused Jerri to be cold called telephonically be employees and agents of Law Firm Headquarters with the intent to sign Jerri up for legal representation with Alpha Law and McSweeney Langevin. Further, Law Firm Headquarters, in coordination with Surgical Assistance, and Blake Barber fraudulently convinced Jerri, while in and a resident of Arkansas, that she needed to have her Boston Scientific vaginal tape removed in Florida.

---

[2] See In Re, American Medical Systems, 2:12-md-02325, Brief in Support of Motion to Quash ECF Doc. No. 2206 at 3 (S.D. West Virginia 2017) (stating that Law Firm Headquarters ". . . has provided traditional legal support services to [Alpha Law and McSweeney/Langevin] separately, as the **agent of each**. Pursuant to separate agreements with each of the Law Firms, [Law Firm Headquarters] provided marketing assistance, prospective client screening, assistance with due diligence on claim validity, client care services, and data management, among other services. The Law Firms instructed and supervised these functions of the Law Firm's behalf. See also Id. at 12 (stating that Law Firm Headquarters "served as an agent in communicating with clients and prospective clients. . . ." on behalf of lawfirms).

7

Original Complaint
Plummer v. McSweeney, et al

EXHIBIT A

25.   Law Firm Headquarters, Surgical Assistance, and Blake Barber helped plan and coordinate Jerri's eventual mesh removal in Orlando Florida, and even helped plan and coordinate Jerri's travel to the state of Florida.

26.   Defendant Women's Health and Surgery Center is a medical provider that provides medical services to residents of Arkansas. In fact, Women's Health and Surgery Center provided medical services to Jerri, a resident of Arkansas. Likewise, based upon information and belief, Women's Health and Surgery, in coordination with Surgical Assistance, Blake Barber, and Law Firm Headquarters, helped plan, coordinate, arrange, and even fund Jerri's travel from Arkansas to Florida for the operation.

27.   Defendant Kasia Osanzinska and Whitney Shoemaker, DO are medical care providers in the state of Florida. They treat residents of Arkansas and in fact treated Jerri, a resident of Arkansas. Based upon information and belief, they also participated in the conspiracy to bring Jerri to Florida to have the mesh removed without it being medically necessary.

28.   Moreover, Boston Scientific is in the business of manufacturing, producing, and supplying medical supplies and equipment. Here, Boston Scientific manufactured, produced, and distributed potentially defective vaginal mesh that was implanted into the Plaintiff during a medical

8

procedure in Benton, Arkansas. All claims against Boston Scientific involve this distribution of potential defective mesh.

29.    Thus, all of the Defendants have minimum contacts with the state of Arkansas and this cause of action is directly related to those contacts. Therefore, personal jurisdiction is proper in this Court.

30.    This Court also has jurisdiction over the subject matter pursuant to Ark. Const. amend. LXXX, § 6 and Ark. Code Ann. § 16-13-201(a).

31.    Venue is also proper in this Court pursuant to Ark. Code Ann. § 16-60-101(a)(1) and (3) because Jerri was a resident of Saline County, Arkansas at the time of all of the alleged wrongful events and a substantial part of the events giving rise to the cause of action occurred in Saline County, Arkansas.

**FACTUAL ALLEGATIONS**

32.    Jerri never graduated high school and has very little education. This fact left Jerri vulnerable to the fraudulent, evil and unconscionable acts of many in this case.

33.    On June 13, 2008, Jerri underwent a transvginal tape operation where Boston Scientific transvaginal tape was implanted in her body.   This procedure took place at Saline Memorial Hospital in Benton, Arkansas

9

under the care and guidance of Dr. David Caldwell, M.D., a local board certified OBGYN.

34.   Some point thereafter it was discovered that the vaginal tape or mesh that was implanted in Jerri was **possibly** defective.

35.   Based upon information and belief, Vincent Chhabra and Michael Chhabra violated HIPPA laws and discovered that Jerri had possibly defective Boston Scientific Mesh implanted in her.

36.   Subsequently, Law Firm Headquarters, or more likely their offshore call center in India, at the direction of Vincent and Michael Chhabra cold called Jerri in late October of 2014 acting under the guise of "Medical Associates" to encourage Jerri to hire their attorneys to pursue a claim against Boston Scientific for the potentially defective  transvaginal mesh. Several more calls like this took place thereafter. All of the later calls took place in November 2014. Some of the later calls involved the Defendant Surgical Assistance acting under Defendant Blake Barber.

37.   In these calls, instead of advising Jerri of the truth, that her transvaginal mesh was POTENTIALLY defective, they purposefully lied and advised Jerri that her mesh absolutely was defective, and that if she did not have it removed, it could potentially kill her. They also advised Jerri that she could make a great sum of money in pursuing a claim against Boston Scientific

10

Original Complaint
Plummer v. McSweeney, et al

EXHIBIT A

through one of their partner attorneys. Likewise, they lied and advised Jerri that she would need to have the mesh removed by a physician in Florida because no physician close to Jerri preformed such an operation.

38.  Jerri, believing these false representations that her Boston Scientific Transvaginal mesh was defective and could possibly kill her, agreed to allow the callers to refer her to a lawyer and medical provider.

39.  The whole reason that these entities lied to Jerri about the necessity of her mesh removal was because if she had the mesh removed, her case was more valuable to Vincent Chhabra, Michael Chhabra, Rhett McSweeney, David Langevin, Richard Martindale, Alpha Law, and McSweeney Langevin. Also, if Jerri had the operation through these entities, Surgical Assistance and Blake Barber received a kickback from the medical providers in Florida.

40.  Likewise, they lied to Jerri about the need to go to Florida because the Chhabra's through Surgical Assistance and Blake Barber had a relationship and understanding with Women's Health and Surgery Center where they knew that Women's Health and Surgery Center and their physicians would preform the mesh removal  without regard to whether removal was medically prudent or necessary, and in exchange Law Firm Headquarters and its agents would convince their clients through lies that they needed to

11

obtain loans secured by the case to pay the full amount of the billing to Women's Health and Surgery rather than submit a claim through insurance, Medicare, or Medicaid.[3]

41.  Further, the Chhabra's, McSweeney Langevin, Alpha Law, Women's Health and Surgery, Surgical Assistance, and Blake Barber had a relationship with LawCash whereby they would put any ethical and professional judgment aside, and arrange and coordinate for their clients/patients to secure funding from LawCash at staggering high interest rates (43% per annum in Jerri's case) secured on their claims against Boston Scientific.

42.  LawCash or its agents after gaining a referral of susceptible prey for their unconscionable and usurious[4] lending practices, would give Blake Barber and Surgical Assistance a referral fee.

43.  Besides Mr. Barber's kick backs, the Chhabra's, McSweeney/Langevin, Alpha Law and Women's Health and Surgery's purpose behind this referral program with LawCash, was to obtain money so that Women's Health and

---

[3] This allowed Women's Health and surgery to charge significally more for its services and facilities. In Jerri's case, Jerri paid around $21,000 for the procedure to Women's Health and Surgery when it would have cost approximately between $589.35 and $993.33 had the procedure been processed through Jerri's Medicaid. Likewise, based upon information and belief, Defendant Shoemaker individually was paid around $3,500 dollars for the procedure from Women's Health and Surgery whereas she would have been paid around $500 had the procedure been processed through Jerri's Medicaid.

12

Original Complaint
Plummer v. McSweeney, et al

EXHIBIT A

Surgery could be paid the exorbitant full extent of their billing so that they would preform unnecessary surgeries to increase the value of the cases for all those associated with Alpha Law and McSweeney/Langevin. LawCash's purposes was to make phenomenal sums of money by taking almost all of the client's/patient's share of her claim against Boston Scientific while knowing that the lawyers representing the clients would not bring usury claims against them and would lie and say that they explained the terms of the LawCash agreement with their client when they made no such explanation.

44.    This is exactly what happened with Jerri. After she fell for the lie that she must have her mesh removed or she could die, she consented to going to Florida to Women's Health and Surgery to have the mesh removed and allowing the callers to arrange it. Likewise, after believing the lie that she must go to Florida to have the mesh removal, she consented to having Law Firm Headquarters, and Surgical Assistance arrange a loan with LawCash to pay for the operation. Her loan with LawCash was for the full amount of the surgery with Women's Health and Surgery, $21,000.00 with an interest rate of approximately 43% per annum, and was secured by her claim

---

[4] A court in New York has specifically found LawCash's staggeringly high interst rates to be usurious under New York Law. 1. *See Echeverria v. Estate of Lindner*, 7 Misc. 3d 1019(A), 801 N.Y.S.2d 233 (Sup. Ct. 2005), judgment entered sub nom. *Echeverria v. Lindner* (N.Y. Sup. Ct. Mar. 18, 2005).

13

Original Complaint
Plummer v. McSweeney, et al

EXHIBIT A

against Boston Scientific. Based upon information and belief, Defendant Blake Barber and Surgical Assistance received a kick back from LawCash for securing Jerri to agree to their malevolent lending agreement.

45.    Jerri's mesh removal surgery was scheduled for December 12, 2014 at Women's Health and Surgery in Cleremont Florida by Whitney Shoemaker, DO.[5] This was scheduled by agents of Law Firm Headquarters in coordination with LawCash, Alpha Law and McSweeney/Langevin.

46.    In fact, Jerri's legal case against Boston Scientific was initially referred to Alpha Law LLP by Law Firm Headquarters. Alpha Law is a law firm organized by Defendant Richard Martindale and of which Defendant Michael Chhabra (the CEO of Law Firm Headquarters) was a member, and majority owner. Law Cash also had a representivie hold an ownership stake in Alpha Law to ensure that their investments were safeguarded and that no one challenged their usurious practice. However, by November 14, 2014, Jerri's claim was assigned to McSweeney Langevin and McSweeney/Langevin was aware of this assignment.

47.    By November 14, 2014, McSweeney/Langevin, Rhett McSweeney and David Langevin were aware that Jerri was going to be having an operation

---

[5] Jerri's presurgical clearance records report that she was seen at Women's Health and Surgery. Her operative note states that the operation took place at Clermont Ambulatory Surgical Center, but all of the billing for the surgery was billed through Defendant Women's Health and Surgery.

14

Original Complaint
Plummer v. McSweeney, et al

EXHIBIT A

to have her mesh removed at Women's Health and Surgery, and that LawCash would be funding the entire cost of the procedure without anything being billed to insurance, Medicaid, or Medicare.

48.   Likewise, by December 4, 2014, McSweeney/Langevin, Rhett McSweeney, and David Langevin knew that the LawCash funding agreement required an attorney to acknowledge that they received a copy of the LawCash agreement, that they read it, and "explained the terms to [their client]."

49.   Jerri signed a written contract with McSweeney/Langevin and Alpha Law on December 8, 2017. In the contract she agreed to pay an attorneys fee of 45% plus costs and even interest on the costs, a staggering fee. Likewise, in the document she agreed to allow disputes to be handled by arbitration in Washington, D.C. Jerri did not and does not have the money to pay to get to Washington D.C., much less fund an arbitration. Likewise, Jerri did not consult with outside counsel about entering into this agreement and McSweeney/Langevin gave her no disclosures about the risks and costs of arbitration. Likewise, the contract attempted to limit McSweeney/Langevin's liability prospectively which is a clear violation of the Model Rules of Professional conduct since they did not make Jerri receive advice from outside counsel.

15

Original Complaint
Plummer v. McSweeney, et al

EXHIBIT A

Saline County AR      CTX-000000017726      15 of 35

50.   Jerri's operation took place on December 12, 2014 after she had signed both a letter of protection in favor of Women's Health and surgery and the LawCash funding agreement, however, Jerri signed both things without talking to an attorney first. This was because nobody from McSweeney/Langevin contacted Jerri about the LawCash agreement or about the surgery even though they knew in November that Jerri would be having the surgery and that it was going to be funded by LawCash.

51.   David Langevin signed the LawCash attorney acknowledgement for Jerri on December 15, 2014-three days after Jerri had the surgery. He signed this document saying that he explained the terms to Jerri when such an explanation never took place.

52.   Based upon information and belief, LawCash did not pay for Jerri's operation until David Langevin signed this form. In other words, Jerri already obtained the surgery and when there was no need to secure the funding-David Langevin signed a form securing the funding. It is clear that David Langevin did this to keep his conspiratorial relationship viable with both doctors and LawCash. In fact, David Langevin has a long history of signing these LawCash funding agreements after his clients surgeries have happened-again to keep everybody in the machine happy.

16

Original Complaint
Plummer v. McSweeney, et al

EXHIBIT A

53.    Moreover, Jerri's operation took place after little to no diagnostic testing by Shoemaker or Women's Health & Surgery Center to ensure that this procedure was in Jerri's best interest.

54.    In fact, the only testing that appears to have taken place was simply making sure that Jerri was cleared for surgery—not that the surgery was in her best interest. To this end, Jerri's surgical clearance was performed on December 11, 2014 by a general surgeon—not someone with a specialty in vaginal mesh/tape removal.

55.    In fact, the first time that Jerri talked to Defendant Shoemaker—the surgeon removing her tape—was in the operating room. This was because the conspiratorial relationship and agreement foreclosed the need to make sure the surgery was medically necessary.

56.    The fact that Jerri was sent to Florida is even more staggering considering the fact that she had an OBGYN physician in Arkansas that could have done this operation if Jerri had really needed it. Likewise, said physician could have done the procedure by billing Medicaid rather than the full amount of the bill, but the fact that her physician in Arkansas had medical ethics and was not a part of the Chhabra machine foreclosed anyone, even her attorneys with a strong fiduciary duty toward her, from recommending that she not go all the way to Florida to have the procedure.

57.   Not surprisingly, the removal surgery has caused Jerri substantial problems. For example, she has no bladder or bowl control. All of these problems did not exist before her mesh/tape was removed.

58.   Based upon information and belief, it was against Jerri's best interest for the tape/mesh to be removed and any reasonable doctor would not have removed same.

59.   In short, it would have been in Jerri's best interest to see a local OBGYN to determine if she needed the transvaginal mesh/tape removed, but instead, she was sent to a DO several states away that preformed an operation that was unnecessary and  at an exorbitant rate and then her attorneys had the exorbitant rate paid off by securing a loan with LawCash that was never read to Jerri even though David Langevin signed the document saying that he read it to her.

### COUNT I: FRAUD

60.   The Plaintiff re-alleges and incorporates all of the allegations made in paragraphs 1-60 as set forth word for word.

61.   Defendants, Law Firm Headquarters, and Surgical Assistance under the direction of Vincent Chhabra, Michael Chhabra, and Blake Barber fraudulently told Jerri that she needed to have her Boston Scientific Mesh removed or that she could die.

18

62.   This representation was a false representation of material fact, as Jerri would have been better off without having the mesh removed and she certainly would not have died from the mesh.

63.   Likewise, these representations were made without enough information to support it and Law Firm Headquarters, Surgical Assistance, Vincent Chhabra, Michael Chhabra, and Blake Barber knew their was insufficient evidence to support these representations, as they knew they were not doctors and knew nobody had evaluated Jerri's medical needs.

64.   These representations were made with the intent to induce Jerri into the surgery, as that was the whole goal of these conspirators.

65.   Jerri reasonably relied upon these representations to her detriment as she is scientifically worse off for having the surgery.

66.   This fraud was an intentional and malicious act for which punitive damages should lie.

67.   The above mentioned conduct also constitutes constructive fraud.

68.   Likewise, these representations were made by agents of Rhett McSweeney, David Langevin, Richard Martindale, Alpha Law, and McSweeney/Langevin within the course and scope of their agency and employment. Thus, Rhett McSweeney, David Langevin, Richard Martindale,

19

Alpha Law, and McSweeney/Langevin should be vicariously liable for this fraud as well.

### CONT II. CONSTRUCTIVE FRAUD AND BREACH OF FIDICUARTY DUTY AGAINST OSADZINSKA AND SHOEMAKER

69.    The Plaintiff incorporates, reasserts, and realleges all of her allegations as set forth in paragraphs 1-69 of her complaint.

70.    Defendants Osadzinska and Shoemaker both participated in the medical treatment of Jerri's recession. Osadzinska did a presurgical clearance and Shoemaker preformed the operation.

71.    Thus, they owed Jerri a fiduciary duty of loyalty, competence, and candor.

72.    By clearing Jerri for surgery and actually preforming the surgery, these Defendants made representations that the surgery was in Jerri's best interest when it indeed was not in her best interest.

73.    Likewise, both Defendants knew that Jerri was paying an exorbitant rate for this surgery and they knew that she could have obtained this surgery, if she actually needed the surgery, with another physician by billing Medicad, yet they said nothing to Jerri in an effort to deepen their pockets.

74.    Thus, these Defendants committed constructive fraud as well as a breach of their fiduciary duty toward their patient.

### COUNT III: ATTORNEY PROFESSIONAL NEGLIGENCE

20

Original Complaint
Plummer v. McSweeney, et al

EXHIBIT A

75.    The Plaintiff incorporates, realleges, and reasserts all allegations set forth in paragraphs 1-75 of her complaint.

76.    Rhett McSweeney, David Langevin, and Richard Martindale and their employees and agents, including Law Firm Headquarters, and Surgical Assistance are not medical experts, yet were giving out medical advice. This was done out of pure greed because if Jerri had the surgery, her case would be worth more. Thus, Jerri was talked into having a surgery by agents of lawyers who were simply trying to make their pockets deeper, without regard to their client's health and well being. On top of this, Jerri was talked into agreeing to a needless loan at a staggering 43% interest rate, again only to keep good relationships alive between this group of health abusing conspirators.

77.    First, a competent and reasonable attorney in the community would never have allowed their agents to refer Jerri to a physician several states away when she had an adequate physician in Arkansas, where she lived. Likewise, a competent and reasonable attorney in the community would have advised their client against taking such an action once they discovered it was happening, which undoubtedly Rhett McSweeney, David Langevin and McSweeney/Langevin knew by November 14, 2014. Yet here, Rhett McSweeney, David Langevin and McSweeney/Langevin did nothing

21

and allowed Jerri to go several states away to have an unnecessary surgery by known incompetent medical staff while paying too much for the unnecessary surgery by taking out a secured loan at a staggering high interest rate.

78.    The fact that Jerri was apt to receive the operation without truly appreciating if it was in her best interest can be clearly seen from the fact that they flew Jerri down to Florida to have the operation without any test or screenings, first. It can also be seen from the fact that Dr. Shoemaker and Women's Health wanted to avoid billing Jerri's Medicaid and going through that review process and instead opted to do a letter of protection. Thus, a competent and reasonable attorney would have advised Jerri against going to Florida and doing any of this, yet Rhett McSweeney, David Langevin, and Richard Martindale did nothing.

79.    Third, a competent and reasonable attorney would not have allowed their client to go to a physician that was going to charge the full contractual amount when their client had Medicaid that could have paid for the operation.

80.    Fourth, a competent and reasonable attorney certainly would not have referred and allowed their client to finance the surgery at a 43% interest rate-especially after the client had already had the operation.

22

Original Complaint
Plummer v. McSweeney, et al

EXHIBIT A

81.    All of Jerri's attorneys failed to act as reasonably competent attorneys in the community would act. Thus, Rhett McSweeney, David Langevin, Richard Martindale, McSweeney/Langevin, LLC, and Alpha Law breached their duty of representation to Jerri.

82.    Moreover, the breach of this duty actually and proximately caused damages to Jerri.

83.    These facts also show that Rhett McSweeney, David Langevin, Richard Martindale, McSweeney/Langevin, LLC, and Alpha Law all breached their fiduciary duty of loyalty and competency to Jerri as well. This breach also actually and proximately caused Jerri substantial damages.

84.    Moreover, all of the defendants mentioned in this count should have known that the natural and probable result of their egregious actions herein complained of would be severe personal injury to Jerri, yet they acted in a willful and wanton manner in a disregard to her health and well being. Thus, punitive damages should lie.

### COUNT IV: CIVIL CONSPIRACY

85.    The Plaintiff incorporates, realleges, and reasserts all of her allegations in paragraphs 1-85 of her complaint.

86.    Here, there was a combination of persons, including Rhett McSweeney, David Langevin, Richard Martindale, Whiteney Shoemaker, Vincent

23

Chhabra, Michael Chhabra, Blake Barber, Surgical Assistance, Law Firm

Headquarters, Alpha Law, McSweeney/Langevin, LawCash and Women's

Health and Surgery who had a referral agreement that was immoral and

oppressive to the client and patient all to make their pockets deeper.

Likewise, convincing Jerri that she needed surgery was done in an immoral

and oppressive way.

87.     Thus, all of the defendants, save Boston Scientific and Dr. Osadzinska[6],

have committed the tort of civil conspiracy which actually and proximately

caused severe damages to Jerri.

88.     Moreover, this conspiracy is an intentional act without regard to the

health and wellbeing of others. Likewise, all of the named defendants in

this count, knew or should have known that the natural and probable

result of their actions would be severe personal injury, but they acted

willfully and wantonly in a reckless disregard. Thus, punitive damages

should lie.

89.     Judgment against all conspirators should be rendered jointly and

severally.

COUNT V: VIOLATIONS OF ARKANSAS DECEPTIVE TRADE PRACTICES ACT

[6] The Plaintiff reserves the right to amend her pleading to add a count of civil conspiracy against Dr.
Osadzinska once discovery progress in this matter.

24

Original Complaint
Plummer v. McSweeney, et al

EXHIBIT A

90.    The Plaintiff incorporates, realleges, and reasserts all of her allegations

in paragraphs 1-90 of her complaint.

91.    The actions of all of the Defendants, save Boston Scientific and

Osadzinska, also violate Ark. Code Ann. § 4-88-107(8) and (10). This is

because it is a deceptive and unconscionable trade practice to convince a

lady that she needs to have surgery without any prescreening and then

charge her the full amount of the billing rather than submit the claim to

Medicaid. All of the Defendants, save Osadzinska and Boston Scientific, or

their agents acting within the course and scope of their agency were

involved in this deception.

92.    These violations of the Arkansas Deceptive Trade Practices Act caused

substantial damages to Jerri.

93.    Likewise, Jerri should be awarded a reasonable attorneys fee for her

persecution of this action under the Arkansas Deceptive Trade Practices

Act.

VI: PROFESSIONAL NEGLIGENCE AGAINST SHOEMAKER AND OSADZINSKA,

94.    The Plaintiff incorporates, realleges, and reasserts all of her allegations

in paragraphs 1-94 of her complaint.

25

Original Complaint
Plummer v. McSweeney, et al

EXHIBIT A

95.  A reasonable and competent physician in the community would not have recommended the mesh removal surgery for Jerri nor cleared her for said surgery.

96.  Both Shoemaker and Osadzinska breached this duty to Jerri.

97.  This action would have been brought sooner and within the applicable two year statute of limitations for medical injury, but the wrongfulness of Shoemaker and Osadzinska's actions were fraudulently concealed by false representations by Osadzinskia and Shoemaker that the surgery was needed and by false representations by their agents acting on their behalf that Jerri had to have the surgery or could possibly die. Only within the last few months did Jerri discover this falsehood and that is a reasonable amount of time to make the discovery considering Jerri's lack of education and other circumstances.

COUNT VII: UNJUST ENRICHMENT BY SHOEMAKER, WOMEN'S HEALTH AND SURGERY, AND BLAKE BARBER AND SURGICAL ASSISTANCE

98.  The Plaintiff incorporates, realleges, and reasserts all of her allegations set forth in paragraphs 1-98.

99.  Based upon information and belief, Defendants Shoemaker and Women's Health made a substantial amount of money by causing Jerri to have the unnecessary surgery. Even if Jerri needed to have surgery they

26

made too much money because they could have billed Jerri's Medicaid. There was no reason for Jerri's Medicaid not to have been charged.

100. Likewise, based upon information and belief, Defendant Barber and Surgical Assistance made a profit on their fraud by getting a kick back from Women's Health and/or Shoemaker.

101. Thus, it is clear that Defendants Shoemaker, Women's Health and Surgery, Surgical Assistance, and Blake Barber have been unjust enriched as equity and good consciousness dictate that they not be able to retain the money they made on this unnecessary surgery that is the product of their fraud, and certainly not keep money in excess of what Medicaid would have charged.

COUNT VII: DECLARATORY RELEIF AGAINST MCSWEENEY/LANGEVIN AND
ALPHA LAW

102. The Plaintiff incorporates, realleges, and reasserts all of her allegations in paragraphs 1-102 of her complaint.

103. The Court should declare that Jerri's contract with Alpha Law and McSweeney Langevin is void in its entirety due to fraud, unconscionability, and undue influence.

104. Likewise, the Court should declare that the arbitration and mediation provision is the contract is null and void due to the fact that McSweeney/Langevin nor Alpha Law ever advised Jerri to get advice from

27

Original Complaint
Plummer v. McSweeney, et al

EXHIBIT A

outside counsel on these provisions nor did anybody from McSweeney/Langevin or Alpha Law (who were supposed to be acting as her attorneys in a fiduciary capacity) made any explanation to Jerri about these provisions. Likewise, Jerri should be excused from these provisions due to the doctrines of unconscionability, impracticability, unilateral mistake, and impossibility of performance.

105.  This court should also declare null and void the choice of law provision in the contract because the contract is void in its entirety and because D.C. law has no reasonable relationship to the parties, as Alpha Law's D.C. existence was merely to allow fraudulent non-lawyers, i.e. Michael Chhabra and Vincent Chhabra to own a piece of the conspiratorial machine's fruits, i.e. the cases they obtained by cold calling and lying.

106.  Likewise, the Court should declare null and void any language in the contract that attempts to prospectively relieve the law firms and their attorneys from liability as violative of public policy as enshrined in the Arkansas Rules of Professional Conduct.

107.  Since this count sounds in contract, Jerri should be award a reasonable attorneys fee.

COUNT VIII: DECLARATORY JUDGMENT AGAINST LAWCASH

28

108. The Plaintiff incorporates, realleges, and reasserts all of her allegations in paragraphs 1-108 of her complaint.

109. This Court should declare, under the Arkansas Declaratory Judgment Act, that Jerri's Contract with LawCash is null and void as it was entered into under fraudulent representations by agents of LawCash and because an attorney never explained the provisions of the contract to Jerri-which was a material condition upon the contracts existence.

110. Likewise, in the alternative, the Court should declare that the contract with LawCash is usurious under both New York and Arkansas Law.

111. Since this count sounds in contract, the Plaintiff should be awarded a reasonable attorneys fee.

COUNT VIV: PRODUCTS LIABILITY BOSTON SCIENTIFIC

112. The Plaintiff incorporates, realleges, and reasserts all of her allegations in paragraphs 1-108 of her complaint.

113. The Plaintiff believes that the Boston Scientific tape that was implanted in her was defectively designed, but causing her little harm. Thus, the Plaintiff believes that her real harm was suffered when several of the named Defendants breached their professional and fiduciary duties in recommending and removing the vaginal tape and by conspiring with one another to have the tape removed.

29

EXHIBIT A

114. However, pleading in the alternative, the defective and unreasonably dangerous nature of the Boston Scientific Tape caused the Plaintiff's injuries.

115. Again, the Plaintiff believes that her substantial damages were caused by her other counts, but if the Court decides against her in these counts, then the defective nature of the vaginal tape would have caused her damages. Thus, pleading in the alternative, the defective product by Boston Scientific actually and proximately caused the Plaintiff damages.

## DAMAGES

116. The actions and/or inactions of all of the Defendants acting alone and jointly proximately caused the damages, injuries and enhanced injuries. Plaintiffs seek compensation for the following elements of damage under Arkansas law:

(a) Excruciating pain and suffering;
(b) Mental anguish and distress;
(c) Past and future medical expenses;
(d) Disfigurement;
(e) Past and future loss of earnings and earning capacity;
(f) Loss of household services;
(g) Unjust enrichment[7]
(h) Punitive damages
(i) A reasonable attorneys fee;
(j) Her costs;

---

[7] This element of damages is sought from Defendant Shoemaker, Women's Health and Surgery, Surgical Assistance, and Blake Barber solely.

30

Original Complaint
Plummer v. McSweeney, et al

EXHIBIT A

(k)   All other general and special damages she is entitled to under
Arkansas law.

Jerri does not yet know the full measure of her damages, but she

believes them to be in excess of Five Million Dollars ($5,000,000.00) in

compensatory damages, and Ten Million Dollars ($10,000,000.00) in

punitive damages.

### RIGHT TO AMEND

117. The Plaintiff believes she is at the punishing end of a deep and

multifaceted conspiracy to benefit at her expense. While there has been

diligent research put forth to date to uncover this deep and multifaceted

conspiracy, the Plaintiff believes that she has still yet to uncover all of the

actors involved.

118. Thus, actors involved with the actions and inactions herein complained

of should take notice that if they were not named in this complaint, it was

by mistake within the meaning of Rule 15 of the Arkansas Rules of Civil

Procedure.

119. Further, the Plaintiff has named John Does 1-99 as Defendants and

reserves the right to amend and add these defendants once their identities

31

Original Complaint
Plummer v. McSweeney, et al

EXHIBIT A

become known. Again, their identities remain unknown despite diligently inquiry as set forth in the affidavit of counsel attached as exhibit A.

WHEREFORE, Plaintiff, Jerri Plummer, prays that she be awarded judgement as set forth above, jointly and severally, in an amount to be determined by the Court, but in an amount greater than that required for federal diversity jurisdictional purposes; her costs herein including a reasonable attorneys fee; and all other just and proper relief to which she may be so entitled.

Dated this 3rd day of November, 2017.

RESPECTUFLLY SUBMITTED,

Ray Baxter, Ark. Bar No. 78012
James R. Baxter, Ark. Bar No. 2017191
The Baxter Law Firm
3115 Alcoa Road
Benton, AR 72015
PH:    501-315-2971
FX:    501-712-2856
Email: raybaxterpa@gmail.com

And

George D. "Bucky" Ellis, Ark. Bar No. 72035
126 N. Main St.
Benton, AR 72015
PH: 501-315-1000
FX: 501-315-4222
Email: gellisinbenton@swbell.net

32

Original Complaint
Plummer v. McSweeney, et al

EXHIBIT A

## EXHIBIT A:

# IN THE CIRCUIT COURT OF SALINE COUNTY ARKANSAS
## CIVIL DIVISION

**JERRI PLUMMER**                                                    **PLAINTIFF**

**Vs.**                      **CASE NO.**

**RHETT MCSWEENEY;**
**DAVID LANGEVIN;**
**MCSWEENEY LANGEVIN, LLC;**
**WHITNEY SHOEMAKER, DO;**
**WOMEN'S HEALTH AND SURGERY CENTER, LLC;**
**PLAINTIFF FUNDING HOLDING INC., D/B/A LAWCASH;**
**VINCENT CHHABRA;**
**MICHAEL CHHABRA;**
**LAW FIRM HEADQUARTERS, LLC;**
**SURGICAL ASSISTANCE, INC;**
**WESLEY BLAKE BARBER;**
**KASIA OSADZINSKA, MD; and**
**BOSTON SCIENTIFIC CORPORATION**
**ALPHA LAW, LLP; and**
**RICHARD MARTINDALE**
**JOHN DOES 1-99**                                              **DEFENDANTS**

### AFFIDAVIT OF ATTORNEY OF RECORD

I, Ray Baxter, am one of the attorneys for the Plaintiff, Jerri Plummer, in the above cause of action. I hereby swear under oath that after diligent search and inquiry, that there still remain unknown entities and individuals who may be liable for the Plaintiff's injuries as set forth in her Complaint. The discovery process of litigation is needed to uncover these possible entities and individuals. Thus, the Plaintiff has added John Doe Defendants to her complaint as provided for by Arkansas law.

Further affiant sayeth not:

_____
Ray Baxter

Affidavit of Attorney
Plummer v. McSweeney, et al

EXHIBIT A

State of Arkansas

County of Saline

Subscribed and Sworn to before me this 3rd[rd] day of November, 2017.

*Connie Curry*

Notary Public

My Commission Expires: 08/12/2019



Affidavit of Attorney
Plummer v. McSweeney, et al

EXHIBIT A