# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# EASTERN DIVISION

**JERRI PLUMMER**                                                                                           **PLAINTIFF**

vs.                              CASE NO. 4:18-CV-00063-JM

RHETT MCSWEENY;
DAVID LANGEVIN;
MCSWEENY LANGEVIN, LLC;
WOMEN'S HEALTH AND SURGERY CENTER, LLC;
PLAINTIFF FUNDING HOLDING INC., D/B/A/ LAWCASH;
VINCENT CHHABRA;
MICHAEL CHHABRA;
LAW FIRM HEADQUARTERS, LLC.;
SURGICAL ASSISTANCE, INC;
WESLEY BLAKE BARBER;
KASIA OSADZINSKA, M.D.;
ALPHA LAW, LLP.;
RICHARD MARTINDALE;
RON LASORSA; and
JOHN DOES 1-99                                                                                                **DEFENDANTS**

## ORDER

Pending is a motion to compel arbitration filed by separate defendants Rhett McSweeney, David Langevin, and McSweeney Langevin, LLC ("McSweeney/Langevin"). Plaintiff Jerri Plummer has responded, Defendants have replied, and Plummer has filed a sur-reply. For the reasons stated below, the motion to compel arbitration is denied.

### Background Facts

This lawsuit arises out of a transvaginal mesh removal operation and litigation against the manufacturer of the mesh, Boston Scientific.[1] The following factual allegations come from

---

[1] Boston Scientific was named as a defendant in this action but was dismissed on Plaintiff's motion in favor of allowing all her claims against that defendant to be prosecuted in the pending MDL proceedings.

Plummer's first amended complaint and her declarations attached in support of her response to the motion to compel arbitration. (Docket Nos. 25, 53-1, -3.) Plummer, a resident of Arkansas, underwent a transvaginal mesh tape operation on June 13, 2008 at Saline Memorial Hospital in Benton, Arkansas. Over eight years later, in October of 2014, Plummer received an unsolicited call on her cell phone from an individual who said her name was Yolanda advising her that the transvaginal mesh implanted in her body was defective and that if she did not get it removed then she would die. Yolanda told Plummer that her company would get Plummer set up with a doctor and surgery center in Florida so she could get the mesh removed. Yolanda also told Plummer that her company could get her set up with attorneys that could get her compensation for the surgery and that the surgery and the transportation to the surgery would not cost her anything. After electronically signing numerous documents sent to her on her cell phone through DOCUSIGN, none of which she read or had explained to her, Plummer traveled to Florida and had the removal surgery on December 12, 2014. The removal surgery has caused Plummer substantial and ongoing medical problems.

Plummer filed a complaint and an amended complaint against the entities that played a role in her mesh removal surgery and in the subsequent lawsuit. She asserts claims of fraud, constructive fraud, breach of fiduciary duty, attorney malpractice, civil conspiracy, violations of the Arkansas Deceptive Trade Practices Act, medical malpractice, and unjust enrichment; she also seeks declaratory relief against various defendants. Defendants Rhett McSweeney, David Langevin, and McSweeney/Langevin answered the complaints then filed this motion to compel arbitration after having raised the issue in their answers.

The motion to compel arbitration is based on the Contingency Fee Retainer Agreement ("the agreement") that was one of the documents sent to Plummer via DOCUSIGN. (Document

No. 42-1). The parties named in the agreement are Plummer and Defendants Alpha Law LLP ("Alpha") and McSweeney/Langevin LLC ("McSweeney/Langevin"). Plummer signed the agreement electronically; neither Alpha nor McSweeney/Langevin signed the agreement. The services covered in the agreement were Plummer's claims against the manufacturers and distributors of the transvaginal mesh that was removed.

The agreement contains a paragraph regarding alternate dispute resolution, which reads:

> Client agrees that, in part to protect Client's own confidentiality and privileged information, that Client and Counsel agree to resolve any potential disputes via resort to confidential meditation within 60 days of such dispute.[2] Client and Counsel both agree that they will file no suit and/or grievance with any public body or court, and that any statute of limitations shall be deemed tolled pending said mediation. If the mediation process does not resolve the issue, then Client and Counsel agree to submit their dispute to binding arbitration in Washington D.C. before JAMS. CLIENT HEREBY ACKNOWLEDGES THAT ARBITRATION IS CLIENT'S ONLY RECOURSE AND THAT CLIENT WAIVES CLIENT'S RIGHT TO TRIAL BY JURY AND TO JUDICIAL APPEAL BY SIGNING THIS AGREEMENT. Client further waives any right to bring any claim in a representative action or "class action." This clause alone shall be construed under and consistent with the American Arbitration Act.

Plummer, as previously stated, is a resident of Arkansas. Rhett McSweeney and David Langevin are attorneys and residents of Minnesota, and McSweeney/Langevin was organized under the laws of Minnesota. Alpha is a limited liability partnership organized under the laws of the District of Columbia. Plummer filed this action in Saline County, Arkansas, and Defendants McSweeney and Langevin and McSweeney/Langevin removed it to this Court based on diversity jurisdiction.

## Analysis

As Plummer and Defendants have both relied on matters outside the pleadings, the Court

---

[2] McSweeney/Langevin states that it has conferred with counsel for Plummer and both parties have stipulated that they waive the mediation requirement. (Document 43, p. 3, fn 1).

will analyze the motion to compel arbitration under the standard for summary judgment, "viewing the evidence and resolving all factual disputes in the nonmoving party's favor." *Nebraska Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 742 (8th Cir. 2014). *See also Andresen v. IntePros Fed., Inc.*, 240 F. Supp. 3d 143, 148 (D.D.C. 2017)( "A motion to compel arbitration is examined under the summary judgment standard of Federal Rule of Civil Procedure 56(c), as if it were a request for summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.")(internal quotations omitted). Plummer submitted two declarations in support of her response to the motion, which separate defendants did not dispute in their reply.

In deciding whether to grant a motion to compel arbitration, the Court asks only "(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *Faber v. Menard, Inc.,* 367 F.3d 1048, 1052 (8th Cir. 2004). "State contract law governs whether the parties have entered into a valid arbitration agreement." *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 784 (8th Cir. 2016). The agreement provides that it will be construed under the laws of the District of Columbia, which has the same requirements for the formation of a valid contract as in Arkansas: (a) competent parties, (b) lawful subject matter, (c) legal consideration, (d) mutual agreement, and (e) mutual obligations. *Foundation Telecomms, Inc. v. Moe Studio, Inc.,* 16 S.W.3d 531 (Ark. 2000); *Ponder v. Chase Home Fin., LLC*, 666 F. Supp. 2d 45, 48 (D.D.C. 2009).[3] The agreement also provides that the arbitration clause is to be construed consistent with the American Arbitration Act, now known as

---

[3] Plummer states that she has "serious doubts about the validity of the choice of law provision" but has been "unable to find significant differences between Arkansas and D.C. law." (Doc. 54, p. 2). Likewise, McSweeney/Langevin agrees that "this Court's analysis would not change no matter which state's law is considered." (Doc. 43, fn. 2).

the Federal Arbitration Act ("FAA").

Defendants Rhett McSweeney, David Langevin, and McSweeney/Langevin rely on the contingency fee agreement electronically signed by Plummer as evidence of the existence of a valid arbitration agreement. As to whether the dispute falls within the terms of the agreement, the agreement is broadly written to encompass "any potential disputes."

In her challenge to the enforcement of the arbitration agreement, Plummer makes the following arguments: (1) there is no contract because not all parties to the agreement accepted the agreement; (2) individual defendants David Langevin and Rhett McSweeney are not parties to the purported agreement; (3) even if there was an agreement, it is unenforceable.

1. <u>Is there a contract?</u>

Plummer admits that she signed a written contract with Mc/Sweeney/Langevin and Alpha Law on December 8, 2017, and that she agreed to the contract. (Document 25, para 47). The only required element of contract formation Plummer challenges is the lack of mutual agreement based on the evidence that only Plummer signed the agreement. The Court finds that even without the signature of an agent for Langevin/McSweeney or Alpha Law, the contingency fee agreement evidences a contract between Plummer and Langevin/McSweeney. "[A]n offer is, by definition, binding on the offeror if it is properly accepted by the offeree." *1836 S St. Tenants Ass'n, Inc. v. Estate of B. Battle*, 965 A.2d 832, 839 (D.C. 2009). Langevin/McSweeney submitted the offer to formalize the terms of their attorney-client relationship, and Plummer accepted the terms when she signed.

2. <u>Can David Langevin and Rhett McSweeney compel arbitration?</u>

In her First Amended Complaint, Plummer alleges that attorneys Rhett McSweeney and

David Langevin are members and agents of the limited liability company McSweeney/Langevin. In most of the allegations against McSweeney/Langevin, Plummer also includes the individual defendants Rhett McSweeney and David Langevin.

Under the laws of the District of Columbia, a contract can be enforced by nonparties to the contract under traditional principles of contract and agency law, including "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Sakyi v. Estee Lauder Companies, Inc.*, 308 F. Supp. 3d 366 (D.D.C. 2018)(citing *Arthur Andersen*, 556 U.S. at 631, 129 S.Ct. 1896; internal quotations and citations omitted). Furthermore, a non-signatory can compel arbitration with a signatory when the non-signatory is seeking to resolve issues that are intertwined with an agreement that the signatory has signed. *Riley v. BMO Harris Bank, N.A.*, 61 F. Supp. 3d 92, 99 (D.D.C. 2014)(citations omitted); *see also Kelleher v. Dream Catcher, L.L.C.*, 278 F. Supp. 3d 221, 225 (D.D.C. 2017).

The claims Plummer asserts against Rhett McSweeney and David Langevin are clearly intertwined with the claims she makes against McSweeney/Langevin. As such, they are entitled to seek to enforce the arbitration provision of the agreement to the same extent as McSweeney/Langevin.

3. <u>Is the agreement to arbitrate unenforceable?</u>

A court may invalidate an arbitration agreement based on generally applicable contract defenses' like fraud or unconscionability. *Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017). Plummer makes several arguments against the enforceability of the arbitration agreement. Her arguments on the issues of fraudulent inducement, unfairness, and

unconscionability persuade the Court that the agreement to arbitrate is unconscionable.[4]

According to the laws of the District of Columbia, "[t]he purpose of the unconscionability doctrine is to prevent 'oppression and unfair surprise.'" *Urban Investments, Inc. v. Branham*, 464 A.2d 93, 99 (D.C. 1983)(internal citations omitted). A court can find a contract to be unconscionable "either because of the manner in which it was made or because of the substantive terms of the contract or, more frequently, because of a combination of both." *Bennett v. Fun & Fitness*, 434 A.2d 476, 480 (D.C. 1980). Although usually a party is required to prove both procedural and substantive unconscionability "in an egregious situation, one or the other may suffice." *Urban Invs., supra, id.* (quoting *Bennett* at 480 n.4).

To make a determination regarding procedural unconscionability, the Court must "look to 'all the circumstances surrounding the transaction,' including the parties' 'bargaining power,' whether the parties had 'a reasonable opportunity to understand' contract terms, 'the manner in which the contract was entered' into, the relative expertise of the parties, and the timeframe in which the contract was completed. *Associated Estates LLC v. BankAtlantic*, 164 A.3d 932, 943 (D.C. 2017)(quoting *Williams v. Walker–Thomas Furniture Co.*, 350 F.2d 445, 450–51 (D.C. Cir. 1965).

Under the facts of this case as presented by Plaintiff and which are not disputed by Defendants, the Court has no trouble finding that the arbitration provision is procedurally unconscionable.[5] While the relationships between the multiple defendants has not been fully

---

[4] While the Court is not convinced that the alleged breach of Rule 1.4(b) of the DC Rules of Professional Conduct results in the unenforceability of the agreement as Plummer argues, the Court is not reaching this argument as it finds the issue of unconscionability dispositive.

[5] The Court offered both parties an opportunity to submit additional evidence on the issue of unconscionability either by written record or by evidentiary hearing, and the only submission was a minor correction by Plummer regarding which document she received via DOCUSIGN had a message from David Langevin.

developed at this time, it is clear that the defendant attorneys and their firm, through agents acting on their behalf, somehow got their hands on Plummer's cell phone number and, after instilling fear of death in her, solicited her to not only undergo a surgical procedure in another state, but also to allow them to represent her in a future action against Boston Scientific. Rhett McSweeney and David Langevin are licensed attorneys; Plummer has a tenth-grade education and is inexperienced in reading contracts—she had "no idea" what an arbitration agreement was until her current attorneys explained it to her. The agreement containing the arbitration clause was submitted to her electronically along with multiple other documents that she was told she needed to sign so she could get her surgery. As she explains, "I felt like I was in a life or death situation and there was no time to dicker over details with people who informed me of my possible impending death and offered a procedure to save my life and to seek justice on my behalf." (Document No. 53-1, p.3). Defendant attorneys never explained the terms of the agreement to her. Within weeks of being contacted by "Yolanda," and without ever having a meeting or a discussion with Defendant attorneys, Plummer flew to Florida to have what she understood to be life-saving surgery.[6] These facts present sufficient evidence of an "egregious situation" such that only proof of procedural unconscionability is necessary.

      Furthermore, Plummer has provided the Court with sufficient proof that engaging in arbitration would make pursuing her claims against these defendants cost prohibitive. She lives with her son, and her only income is $750 per month from disability payments and $129 per month in food stamps. Plummer states that after paying for food and medicine, she does not have any money left over each month and is usually indebted to others. She has produced

---

[6] Loans for her surgery and her expenses traveling to Florida were also arranged by Defendant attorneys and submitted through DocuSign.

evidence showing that the fee for JAMS Arbitrator's management services is $400 per party per day, plus whatever "professional fee" rate is set by the independent contractor, with evidence that this professional fee would start at $5,000. Plummer relies on JAMS Comprehensive Arbitration Rules & Procedure (effective July 1, 2014) which provide that each party shall pay its pro rata share of JAMS fees and expenses unless the parties agree on a different allocation of fees and expenses.[7] There has been no evidence put forth that the parties have agreed to a different allocation in this case, and the arbitration agreement is silent as to fees and expenses of arbitration. The agreement also specifies that the arbitration would take place in Washington, D.C. Plummer has shown that even to take a bus to D.C. would cost $257 that she does not have, nor does she have the money for food or lodging were she to travel to D.C. While Rhett McSweeney, David Langevin, and McSweeney/Langevin do offer in their reply to move the arbitration location to Arkansas, they do not dispute the amount of the fees as put forth by Plaintiff. Plummer has submitted an affidavit from a reputable arbitrator in Arkansas, John Dewey Watson, that the fees and expenses for an arbitrator in Arkansas to hear this case in Little Rock would be between $8,000 and $10,000. The Court finds that Plummer lacks the financial ability to pay the arbitration fees and thus, the arbitral forum is not an accessible forum for her to pursue her claims. Therefore, the Court finds that the arbitration agreement is also "unreasonably favorable to the other party" as it has the effect of only precluding Plummer from seeking redress for her claims; this is sufficient to show that the arbitration provision is

---

[7] Her attorneys in the present case have advanced her the costs of proceeding in court. (Document 53-3).

substantively unreasonable as well.  *Urban Invs*, 464 .2d at 99.

## Conclusion

While the Court finds that separate defendants Rhett McSweeney, David Langevin, and McSweeney/Langevin entered into a contract with Plummer, the arbitration agreement is unconscionable and thus, not enforceable.  Therefore, the motion to compel arbitration (Document No. 42) is DENIED.

IT IS SO ORDERED this 27th day of August, 2018.

James M. Moody Jr.
United States District Judge